UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEVEN ISAAC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:24-cv-1208 |
| MIDDLE EAST BROADCASTING NETWORKS, INC | : |
| Defendant. | : |

## COMPLAINT

COMES NOW, the Plaintiff, Steven Isaac publicly known as Steven Nabil ("Isaac" or "Plaintiff"), by and through his undersigned counsel and moves this Honorable Court for judgment against the Defendant, Middle East Broadcasting Networks, Inc. ("MBN" or "Defendant"), on the grounds and praying for the relief hereinafter set forth:

### Introduction

1. This action involves discrimination by Defendant MBN against Plaintiff Isaac on the basis of national origin.

2. Plaintiff was initially retained as a 1099 contractor in May 2018, but was converted to a W-2 employee on March 10, 2020. His role the entire time was as a correspondent.

3. A copy of his position description is attached hereto as **Exhibit B**.

4. Plaintiff is Iraqi-American.

5. On or around September 2, 2022, Plaintiff was terminated from his position of employment on the basis of his national origin.

### Parties

1

6. Plaintiff, Steven Isaac, is, and at all times relevant hereto, a resident of California.

7. Defendant, MBN, provides news and information via satellite television (Alhurra TV), radio (Radio Sawa) and multiple digital platforms. MBN's headquarters is in Springfield, Virginia.

## Jurisdiction and Venue

8. This action is brought by Plaintiff for damages and injunctive relief on account of Defendant's discriminatory practices as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

9. Plaintiff brings this action for damages and injunctive relief on account of Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII").

10. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and *et seq* 42 U.S.C. § 2000e *et seq*.

11. Plaintiff has satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII, 42 U.S.C. § 2000e-5, in particular:

    a. On or around February 28, 2023, Plaintiff filed charges with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination on account of his national origin.

    b. On April 11, 2024, the EEOC issued Plaintiff a notice of dismissal and notice of suit rights, which was received by Plaintiff shortly thereafter.

    c. The Complaint in this matter was filed with this Court within ninety (90) days from the receipt of the "Notice of Right to Sue".

## Statement of Facts

12. Plaintiff's professional history, discussion with team members, and social media made it open and obvious that he is an Iraqi-American.

13. In addition, Plaintiff had informed, and, Defendant was on notice that Plaintiff was an Iraqi-American.

14. Plaintiff was terminated on September 2, 2022.

15. When Plaintiff was terminated, his direct supervisor was Kalyl Lubad ("Mr. Lubad").

16. At the time of Plaintiff's termination was Hassan Shwiki ("Mr. Shwiki") MBN's Acting President.

17. During his employment, Plaintiff was subject to certain performance assessments.

18. At all times, Plaintiff had positive performance assessments.

19. Plaintiff had never received any verbal or written reprimands prior to his termination.

20. Plaintiff was an exemplary employee.

21. All MBN Journalists are required to abide by MBN's Journalistic Code of Ethics (the "Code"). A copy of the Code is attached hereto as **Exhibit A**.

22. MBN Journalists are defined as those individuals who assign, write, report, edit, post, produce and broadcast news on any of MBN's platforms, including radio, television and digital media (hereinafter referred to as "Journalists").

23. As a correspondent for MBN, Plaintiff was an MBN Journalist.

24. All of the MBN Journalists, whether, correspondents, anchors, investigative journalist, etc., are all bound by the MBN Code and there is nothing about any of the particular positions or their specific scope of work that changes their obligations under the Code.

25. For example, Mr. Maan Aljizzani was terminated for alleged violation of the Code as a result of a tweet.  He is an investigative journalist.  A copy of this position description is attached hereto at **Exhibit D**.

26. Although Mr. Aljizzani had a different supervisor and a different position, the duties and roles

are very similar. In both cases, it was alleged by MBN that it applied the Code as the basis for termination.

27. This is similar with Maan Habib, an Iraqi-Journalist, who held the position of anchor.

28. Thus, for purposes of the Code, and, its application, correspondent is similarly situated to Anchor, and, investigative journalists.

29. In addition, the enforcement of the Code has been coming from MBN's office of the president.

30. In particular, in Plaintiff's case, his direct supervisor, Mr. Lubad, told Plaintiff that he did not want Plaintiff to be reprimanded or terminated, nor did he advocate or request it.

31. Mr. Lubad indicated the decision to reprimand or terminate Plaintiff did not involve Mr. Lubad or his opinions, thoughts, assessments at all.

32. In the beginning of March 2021, MBN gave multiple Iraqi Journalists verbal warnings to stop posting any political content about Iraq on their personal social media accounts.

33. The Iraqi Journalists who received verbal warnings were Plaintiff, Maan Habib ("Mr. Habib"), Saad Nasser ("Mr. Nasser"), and Omar Al-Hamdani ("Mr. Al-Hamdani").

34. No similar warnings or reprimands were given to Non-Iraqi Journalists at that time.

35. Defendant claims that Plaintiff was terminated for violating MBN's Code.

36. MBN selectively and disproportionately applies its Code to Iraqi Journalists.

37. On September 2, 2022, suddenly without a prior warning, Plaintiff was told on an abrupt meeting with William Sbatini, Advisor to MBN President and Mohammed Bardawill, Head of the News, that MBN is terminating his employment. The alleged basis was due to a tweet in violation of MBN's social media policy. No explanation was given at that time.

38. Plaintiff was not told what the tweet was nor was he provided any opportunity to amend, alter, or modify the posting.

39. MBN has used its Code as a pretext to terminate Iraqi Journalists, including Plaintiff, Mr. Maan Aljizzani, and Mr. Habib.

40. There are numerous comparators to Plaintiff, which would include all non-Iraqi MBN Journalists.

41. However, specifically the most comparable would be Khalil Bin Tawila.  Mr. Tawila is an Algerian born correspondent.  Mr. Tawila reported to Mr. Lubad.

42. Mr. Tawila appeared with his title in a TV Interview with a Radical Anti-government Chinese network and called for regime change. He was suspended for two weeks and not let go.

43. This was flagrant violation of the MBN Code and was submitted while on another network.

44. By contrast to any media content or posting of an Iraqi MBN Journalist this was extremely severe.  Nonetheless, the result was not termination, but only a two week suspension.

45. In fact, while Mr. Tawila was out, Plaintiff covered his reporting assignments.

46. Another comparator are MBN investigative reporters.

47. Specifically, MBN employed thee investigative reporters at the time of Plaintiff's termination: Maan Aljizzani (Iraqi), Randa Jebai (Non-Iraqi) ("Ms. Jebai") and Ghalia Bdewi (Non-Iraqi) ("Ms. Bdewi")

48. Maan Aljizzani is a comparator to Plaintiff, but he was terminated for an alleged posting in violation of the Code.

49. Contrasted by the posting of non-Iraqi's Ms. Jebai and Ms. Bdewi.

50. Ms. Jebai and Ms. Bdewi had the same job responsibilities as Plaintiff.

51. Ms. Jebai and Ms. Bdewi were not hired to write opinion pieces or host opinion programs.

52. Ms. Jebai and Ms. Bdewi do not have the same direct supervisor, neither does Maan Aljizzani.

53. However, Maan Aljizzani, Ms. Jebai and Ms. Bdewi were also supervised ultimately by Mr.

Shwiki, who was raising issues with MBN Code.

54. As MBN Journalists, Ms. Jebai and Ms. Bdewi were also subject to MBN's Code.

55. Both Ms. Jebai and Ms. Bdewi regularly post similar content to the Iraqi-journailists on social media.

56. Ms. Jebai and Ms. Bdewi have never received reprimands for violating MBN's Code.

57. Non-Iraqi Journalists rarely, if ever, receive reprimands for violating MBN's Journalistic Code.

58. The postings made by Plaintiff do not violate MBN's Code, and, are less critical and politically charged than the Non-Iraqi journalists, including Mr. Jebai and Ms. Bdewi.

59. Non-Iraqi Journalists Pedro Ghanem ("Mr. Ghanem"), Joe Khawly ("Mr. Khawly") and Tamara Abou Dehen ("Ms. Dehen") frequently tweet their political opinions without reprimand from MBN.

60. Mr. Ghanem, Mr. Khawly, and Ms. Dehen are comparators to Plaintiff.

61. Mr. Ghanem was a reporter and had the same job responsibilities as Plaintiff.

62. While Mr. Khawly and Ms. Dehen were news anchors, they had similar job responsibilities as Plaintiff.

63. Mr. Ghanem, Mr. Khawly, and Ms. Dehen were not supervised by Mr. Lubad.

64. As MBN Journalists, Mr. Ghanem, Mr. Khawly, and Ms. Dehen are subject to MBN's Code.

65. Mr. Ghanem, Mr. Khawly, and Ms. Dehen frequently tweet political opinions that should constitute violations of MBN's Code of Journalistic Ethics.

66. Specifically, Lebanese colleagues, such as Joe Khawly repeatedly called out his guest Neil Strauss who appeared with him on MBN's Al-Hurra on his Instagram account, saying Mr. Strauss was not factual and that Mr. Khawly stands against lies and hypocrisy.

67. Mr. Khawly also has been attacking Christians and calling out "Christian Extremists" in many tweets and posts on his social media platforms, including in tweet from April 2023. On March 4 he retweeted a tweet calling a Christian preacher a "piece of shit".

68. On March 27, he engaged with a sitting U.S. representation on Twitter claiming her prayers are not going to stop mass shootings.

69. On March 30, Mr. Khawly attacked Florida Governor Ron DeSantis in a tweet, a political alliance in Lebanon in another, calling it "a rape of Lebanon", and the government of Lebanon in another, accusing it of human rights violations.

70. However, they Mr. Khawly is still employed by MBN.

71. Tamara Abou Dehen, has regularly stated her strong opinions against the government of Lebanon and even called the political system "corrupt".

72. Examples of these postings can be found attached hereto as **Exhibit C**.

73. By contrast, MBN terminated Mr. Habib and Plaintiff in September 2022. In both cases, giving a vague explanation that Plaintiff violated MBN's Code. MBN gave no further explanation and did not point to any content that allegedly violated MBN's Code.

74. Maan Aljizzani was terminated for allegedly violating MBN's Code.

75. Although Plaintiff, Mr. Habib, and Maan Aljizzani were allegedly terminated for violating MBN's Code, they were actually terminated on the basis of their national origin.

76. None of their postings were in violation of the Code. However, when non-Iraqi MBN journalists post much more inflammatory and aggressively in obvious violation of the Code there is no reprimand.

77. There was an atmosphere of discriminatory atmosphere at MBN against Iraqi Journalists.

78. At all relevant times, MBN was an "employer" as that term is defined in 42 U.S.C. § 2000e(b)

as it is a company "engaged in an industry affecting commerce who ha[d] fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or proceeding calendar year." MBN is thus covered by and subject to Title VII of the Civil Rights Act of 1964.

## COUNT I
### National Origin Discrimination and Termination in Violation of Title VII of the Civil Rights Act of 1964, as amended

79. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint as if set out here in full.

80. By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee on the basis of Plaintiff's national origin, in violation of 42 U.S.C §2000e-2(a)(1).

81. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered compensatory damages, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to his damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

82. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, front pay, back pay, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

83. In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to

recover punitive damages from Defendant in amounts to be proved at trial.

84. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided for by 42 U.S.C §2000e-5(k).

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on his behalf against Defendant;

B. Award Plaintiff Isaac compensatory damages and punitive damages;

C. Award Plaintiff Isaac back pay and front pay;

D. Award Plaintiff Isaac his court costs, expenses, attorneys' fees, prejudgment interest and post-judgement interest;

E. Declare that Defendant's conduct is in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*;

F. Order that Defendant be prohibited from continuing to maintain its illegal policy, practice or custom to further rights afforded to individuals, and, to those who exercise or who attempt to exercise their rights under Title VII.

G. Order that Defendant be required to promulgate an effective policy against such discrimination and to adhere thereto; and,

H. Grant such other relief as this Court may consider just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: July 10, 2024

Respectfully submitted,

        STEVEN ISAAC,

By: /s/  Dirk McClanahan_____
Dirk McClanahan (VSB No. 81208)
MCCLANAHAN POWERS, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Telephone: (703) 520-1326
Facsimile:  (703) 828-0205
Email: dmcclanahan@mcplegal.com